## LEONARD *v.* VICKSBURG, SHREVEPORT AND PACIFIC RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 233.   Argued April 26, 27, 1905.—Decided May 29, 1905.

The rule reiterated that persons may by their acts, or omissions to act,
waive rights which they might otherwise have under the Constitution
and laws of the United States; and the question whether they have or
have not lost such rights by their failure to act, or by their action, is not
a Federal question.

The judgment in this case rested on grounds broad enough to sustain it
independent of any Federal question.

THIS was an action of ejectment brought, in 1896, by the
Vicksburg, Shreveport and Pacific Railroad Company in the
First Judicial District Court, Caddo Parish, Louisiana, against
certain possessors, for whom Smith, Leonard and others were
substituted as defendants, to recover 178.80 acres of land in
that parish less 35.18 acres theretofore recovered by Smith
and others in another action.

Defendants, both by plea and answer, set up that they,
being either the heirs of W. W. Smith, or parties privy, brought
suit in the Circuit Court of the United States for the Western

District of Louisiana against one Turner, asserting ownership to the entire tract, and praying to be restored to possession of about forty acres thereof, alleged to be illegally held by Turner. That Turner disclaimed title and averred that he was a tenant of the Vicksburg, Shreveport and Pacific Railroad Company, and thereupon the railroad company answered, claiming possession and ownership of the entire tract known as Silver Lake.

That a judgment was rendered in said suit in favor of the heirs of W. W. Smith (in 1886), decreeing them to be the owners of the parcel of land possession of which was sought in that suit, and they were put in possession of the same; and that the judgment was final and had the force and effect of *res judicata,* as against all parties to that suit, and as against the claims of plaintiffs in this suit.

The copy of complaint in *Smith* v. *Turner,* attached, showed that diversity of citizenship was set up as the ground of jurisdiction.

And answering, defendants averred that the State of Louisiana sold to W. W. Smith, on the fourteenth of May, 1853, the tract of land claimed by plaintiff, for the price of $1.25 per acre, which was paid into the treasury of the State by Smith, and was never returned to him; that, on the twenty-fourth of February, 1855, the State of Louisiana, through its constituted authorities, issued a patent to said tract of land to Smith;

That the State of Louisiana claimed and acquired the said tract of land as swamp and overflowed land, granted to the State of Louisiana by the acts of Congress of 1849 and 1850, known as the swamp land grants, and that the State sold the lands to Smith, as swamp and overflowed lands;

That all sales of land in Louisiana made as swamp and overflowed land, whether made by the United States or by the State of Louisiana, and whether the land sold was of that character or not, were confirmed by the act of Congress approved March 2, 1855, entitled "An act for the relief of purchasers and locators of swamp and overflowed lands;"

That that act of Congress was extended so as to protect sales after its passage, by the act of Congress of March 3, 1857, to confirm all selections of swamp and overflowed lands by the several States under the acts of Congress of 1849 and 1850;

That the act of March 2, 1855, confirmed the title of the said W. W. Smith to the tract of land, whether it belonged to the State of Louisiana, under the swamp land grant of Congress, or whether it belonged to the United States, and that Smith thus acquired title to the land, both by purchase from the State of Louisiana and by confirmation by Congress.

Thereupon J. H. McCormick, receiver for the Vicksburg, Shreveport and Pacific Railroad Company, filed his plea and exception of *res judicata* to defendants' answer and plea therein of ownership of the said lands, averring that, in a suit entitled *State of Louisiana* v. *W. W. Smith et al.*, brought in 1857 in the District Court of Caddo Parish, Louisiana, defendant Smith put at issue the validity and legality of his title to the land, and, upon final hearing, a judgment was rendered in that suit decreeing the certificate and patent under which Smith claimed to be null and void, and directing their cancellation, and that they be delivered to the State of Louisiana. That defendants appealed to the Supreme Court, which appeal was thereafterwards dismissed; and that said judgment is *res judicata*, and a perpetual bar to defendants' right of action.

The Caddo District Court, Watkins, J., found that on the trial of the cause of *Smith* v. *Turner*, in the Circuit Court, in which case recovery of only 35.18 acres out of the tract of 178.80 acres, known as "Silver Lake," was sought, though title to the entire tract was asserted on one side and denied on the other, the railroad company had offered to prove the value of the whole tract at ten thousand dollars, but that Smith had objected on the ground that only the possession of 35.18 acres was in issue, and the Circuit Court had, therefore, declined to admit the evidence, and that, the case having gone to judgment, a writ of error from the Supreme Court of the United States was dismissed on motion of defendants in

error, because the possession of the 35.18 acres was not worth over $2,000. 135 U. S. 195.

The District Court held that as the same parties, who now contended that the judgment in *Smith* v. *Turner* constituted the thing adjudged as to the entire tract, had successfully insisted in that case that nothing was therein in issue except the right of possession of 35.18 acres, the court was not required to adjudge that the legal effect of that judgment extended to cover the entire tract. As to the judgment in favor of the State, in *State* v. *Smith,* the court recapitulated the facts, finding that the return of the money paid by Smith to obtain the patent was lawfully tendered December 3, 1857; the grounds on which the judgment proceeded; that this judgment was rendered November 24, 1860, in favor of the State, cancelling the Smith entry; that Smith prosecuted an appeal, which, after delay by reason of the Civil War, was dismissed by the state Supreme Court, August 11, 1869; and that because of defective certificates, the Circuit Court was led to believe in *Smith* v. *Turner,* that the case of *State* v. *Smith* had not been disposed of. The District Court further found for reasons given that the title of the railroad company in and to the land was perfect. The court gave judgment in favor of the railroad company and the case was carried to the Supreme Court of Louisiana. 112 Louisiana, 51.

Dealing with defendants' pleas of *res judicata* and estoppel, the Supreme Court held that the general rule that a judgment as to the ownership of a portion of a tract of land is conclusive between the same parties, claiming under the same titles, as to the ownership of the whole tract, should not be applied in the circumstances detailed, which in its opinion operated to confine the effect of the judgment to the particular parcel for which recovery was sought  Those pleas were overruled as to all of the tract except 35.18 acres, but the court sustained plaintiff's plea of *res judicata* predicated on the judgment in *State* v. *Smith,* and thus continued:

"This conclusion disposes of the contention that W. W.

Smith bought the land in question as swamp or overflowed land, since the State, in the suit just referred to, distinctly alleged that it was not so sold, and its position was sustained by the judgment therein rendered. But if it had been sold as land acquired under the acts of Congress of 1849 and 1850 (9. Stat. 352, 519), the result would be the same, since it belonged to that class of land which, under the act of the general assembly, No. 247, p. 306, of 1855, could only have been sold after having been surveyed; and one of the causes of action set up by the State in its suit against Smith, and maintained by the judgment therein rendered, was that it had not been surveyed.

"Finally, it is argued that, under the acts of Congress of 1849 and 1850, title *in præsenti* to all swamp and overflowed lands within its limits vested in the State of Louisiana without regard to selection or approval, that the land in question was of that character, and that the State acquired it under those acts, and hence that the United States could not have granted, and the State (or railroad company) could not have acquired it under the act of June 3, 1856 (11 Stat. 18).

"The acts of 1849 and 1850 were clearly not intended to operate against the will of the State. On the contrary, they distinctly left it to the State to select, subject to the approval of the Secretary of the Interior, the lands which it might consider within the terms of the grant.

"Whether the State might have selected the tract in question, and whether such selection might or would have been approved, need not be here considered   In point of fact, not only was the selection not made and the approval not given, but the grantor and the grantee concurred in the view that the tract fell within the terms of the act of 1856, and was granted to and acquired by the State of Louisiana, as the trustee of the V., S. & P. R. R. Co., for the purpose of aiding in the construction of the railroad which that company was to build."

And the court quoted the headnotes of *Rogers Locomotive*

*Machine Works* v. *American Emigrant Co.,* 164 U. S. 559, to the effect that the swamp land act of 1850 gave an inchoate ·title to the State; that ·the identification of the lands by the· Secretary of the Interior was necessary before the title became perfect; that the certificate of the Secretary, in 1858, that certain lands enured to the State under the railroad act of 1856, was a decision that they were not embraced by the swamp land act of 1850; that the aceptance by the State of lands ·certified to it by the Secretary is conclusive upon the State, and that a contract with a county for swamp and overflowed lands gives no better right than the county had to the lands which had been previously certified to the State.

The court·then stated that, apart from these defenses, there appeared to be no objection to plaintiff's title.

The judgment of the District Court was affirmed, and this writ of error allowed. Motions to dismiss or affirm were submitted and their consideration postponed to the hearing on the ·merits.

*Mr. A. H. Leonard* and *Mr. William P. Hall* for plaintiffs in error.

*Mr. Harry H. Hall* and *Mr. Frank P. Stubbs,* with whom *Mr. W. H. Wise* was on the brief, for defendant in error.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

We assume from the errors assigned, and no other grounds are indicated by the record, that Federal questions in two aspects are relied on to justify this writ of error.

*First.* The construction and application of the acts of Congress of 1849, 1850 and 1856, taken with other acts referred to.

But as to this it should be pointed out in the first place that the state court adjudged the Smith title invalid on the independent ·ground, ·among· others, of non-compliance with an

act of the general assembly of Louisiana; and, in the second ·place, that the Federal question thus suggested had been so explicitly foreclosed by previous decisions as to leave no room for real controversy. Rogers Locomotive Works v. American Emigrant Company, 164 U. S. 559; Michigan Land Company v. Rust, 168 U. S. 589; Equitable Life Assurance Society v. Brown, 187 U. S. 308.

Second. That the Supreme Court of Louisiana, by its judgment in this case, denied a right specially set up or claimed under the Constitution of the United States, or an authority exercised under the United States, that is to say, that such a right was asserted, and was denied by the state Supreme Court, in declining to give collateral effect to a judgment, under certain circumstances, rendered by a court of the United States in Louisiana.

We inquire then whether, when the state court, while holding the defense good as to the 35.18 acres by reason of the judgment in Smith v. Turner, held that, in the circumstances detailed, defendants could not be permitted to insist that the thing adjudged in that case determined the title to the entire tract, that ruling presented a Federal question.

Generally speaking, questions of this sort are not Federal questions. In Pierce v. Somerset Railway, 171 U. S. 641, 648, we said: "A person may by his acts or omission to act waive a right which he might otherwise have under the Constitution of the United States as well as under a statute, and the question whether he has or has not lost such right by his failure to act or by his action, is not a Federal one." Eustis v. Bolles, 150 U. S. 361; Rutland Railroad Company v. Central Vermont Railroad Company, 159 U. S. 630, and Seneca Nation v. Christy, 162 U. S. 283, were cited.

In Eustis v. Bolles, the state court held that by accepting his dividend under insolvency proceedings, Eustis had waived his legal right to claim that the discharge obtained under subsequent laws impaired the obligation of a contract, and this court held that whether that view of the case was sound or not,

it was not a Federal question, and therefore not within the province of this court to inquire into.

In *Seneca Nation* v. *Christy,* it was held by the state court that even if there were a right of recovery on the part of plaintiffs in error because a certain grant was in contravention of the Constitution of the United States, yet that such recovery was barred by the New York statute of limitations.

In *Gillis* v. *Stinchfield,* 159 U. S. 658, and *Speed* v. *McCarthy,* 181 U. S. 269, it was ruled that the application of the doctrine of estoppel to mining locations did not raise Federal questions.

In the present case, the Supreme Court of Louisiana applied the doctrine which forbids parties from assuming inconsistent positions in judicial proceedings.

In its view, Smith, having insisted in *Smith* v. *Turner,* that, notwithstanding the railroad company had come in as defendant, and each party asserted title to the entire tract, the title to the 35.18 acres was alone in issue, and that the value of the whole tract was, therefore, not involved, and the railroad company having been thereby deprived of its writ of error, must be confined in this suit to the specific recovery obtained in that, so far as the effect of that judgment was concerned. That was a question of estoppel or quasi-estoppel and not a Federal question. Whether it was sound or not, it is not for us to inquire. It was broad enough to support the judgment without reference to any Federal question.

*Writ of error dismissed.*